

**SIGNED this 12th day of December, 2014.**

_____
TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 12-12649-TMD |
| | § | |
| KIRBY V. PARSONS and | § | CHAPTER 7 |
| MARY A. BATAGLIA | § | |
|     Debtors. | § | |

**MEMORANDUM OPINION**

A Chapter 7 trustee may, under section 724(b) of the Bankruptcy Code, sell estate property encumbered by tax liens, and then collect his administrative expenses from proceeds of the sale. In this case, the Court concludes that a trustee may not collect administrative expenses by forcing the sale of a Texas homestead, encumbered by IRS liens but claimed as exempt, even if there is no equity in the property.

1

I.   **Factual and Procedural Background**

Kirby W. Parsons and Mary A. Battaglia (the "Debtors") filed for bankruptcy on November 29, 2012, initially seeking relief under the reorganization provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors claimed as exempt a homestead on 11500 Antigua Drive (the "Homestead"), based on the Texas homestead exemption.[1] The Debtors asserted that the Homestead was subject to liens totaling $341,582, including a $330,000 lien held by the Internal Revenue Service (the "IRS"). ECF No. 1 at 16. Faced with these liens, the Debtors asserted an exemption value of $0. ECF. No. 1 at 11. The Debtors also used the Texas Property Code to claim as exempt three firearms[2] and an insurance claim (the "Insurance Claim") for damage to a 2000 Chevrolet van.[3] ECF No. 1 at 14. No objections to any of these exemption claims were filed at that time.

The Debtors filed a Chapter 11 Plan on September 25, 2013, and an Amended Chapter 11 Plan on October 14, 2013. ECF Nos. 39 and 46. The IRS and the United States Trustee (the "US Trustee") both filed objections to confirmation of the Amended Chapter 11 Plan. ECF Nos. 54 and 55. The Court denied confirmation of this plan on December 9, 2013. ECF No. 70. Despite this failure, the case lingered in Chapter 11 until April 2014, when the US Trustee filed a Motion to Dismiss or, in the Alternative, to Convert Case from Chapter 11 to Chapter 7. ECF No. 63. On May 5, 2014, the Court granted the US Trustee's motion by converting the case to the liquidation provisions of Chapter 7. ECF No. 74.

The Debtors then filed amendments to their lists of assets, claims and exemptions. ECF Nos. 78 and 79. In Schedule C of the Amended Petition, the Debtors once again listed the

---

[1] Tex. Const. art. XVI, § 51; Tex. Prop. Code § 41.001(2001); Tex. Prop. Code § 41.002 (2000).

[2] Tex. Prop. Code § 42.001(a) (2007); Tex. Prop. Code § 42.002(a)(7) (2001) (exemption for two firearms).

[3] § 42.001(a); § 42.002(a)(9) (exemption for motor vehicle).

2

Homestead, the firearms and the Insurance Claim (for vehicle damage) as exempt. ECF No. 79. The Debtors listed liens on the Homestead totaling $282,954, including a $276,832 lien in favor of the IRS and a $6,122 lien in favor of the Travis County Tax Collector. ECF No. 79 at 13. However, and despite these liens, the Debtors changed the exemption value in the Homestead from $0 to $230,362. ECF No. 79 at 8.

The Chapter 7 Trustee (the "Trustee") held the meeting of creditors for the converted case on June 5, 2014. Thirty days later, the Trustee filed an objection to the Homestead, the firearms[4] and the Insurance Claim[5] exemptions. ECF No. 83. The Debtors filed a response on July 21, 2014. ECF No. 86. The Court held a hearing on August 19, 2014, and then took the matter under advisement.

One week prior to this hearing, the Debtors filed a Motion to Determine Tax Liability for the IRS claim that is secured by the Homestead. ECF No. 97. By granting that motion on September 25, 2014, the Court approved a settlement between the Debtors and the IRS, reducing the Debtor's tax liability to $140,000. ECF No. 114.

## II. Analysis

### A. The Trustee's Objection to Exemptions is Timely.

The time for objecting to exemptions closed thirty days after the meeting of creditors in the Chapter 11 case, and on this basis, the Debtors initially argued that the Trustee's objection

---

[4] The Debtors have agreed to amend this exemption to conform to the Trustee's objection.

[5] It is unclear whether the Debtors will be able to recover on the Insurance Claim. However, the right to assert and pursue this claim is a present asset and thus the dispute over this exemption is ripe. The Trustee argues that sections 42.001(a) and 42.002(a)(9) of the Texas Property Code can be used to exempt a debtor's vehicles, but not the proceeds from an insurance policy on those vehicles. As the Debtors note, "the proceeds of an insurance policy upon exempt property are not liable for debts of the insured…." *Mosley v. Stratton,* 203 S.W. 397, 398 (Tex. Civ. App. 1918). In *In re Leva*, 96 B.R. 723 (Bankr. W.D. Tex. 1989), the court noted that "Texas case law extends the personal property exemption," – which Debtors have opted to use in this case – "to the insurance proceeds paid upon the loss of an item otherwise exempt under the statute." *Id*. at 738 (citing *Mosley*, 203 S.W. at 398). *See also West v. Carlew (In re Carlew)*, No. H-12-0913, 2012 WL 3002197 at *2 (S.D. Tex. July 23, 2012). The Trustee's objection as to the Insurance Claim is therefore denied.

3

was untimely. However, and as the Debtors ultimately conceded, converting the case to Chapter 7 re-opened the objection period. Fed R. Bankr. 4003(b)(1); Fed. R. Bankr. 1019(2)(b). The Debtors converted their case from Chapter 11 to Chapter 7 on May 5, 2014, and the post-conversion meeting of creditors took place on June 6, 2014. The Trustee's objection was filed on July 2, 2014, within thirty days of that meeting, and was therefore timely under the Bankruptcy Rules.

### B. The Debtors' Homestead Exemption is Proper.

The Trustee seeks to deny the Debtors' homestead exemption because if he can do so, the Homestead will remain property of the estate,[6] and he can then use section 724(b) – which only applies to property of the estate – to sell the Homestead and use the proceeds of sale to pay his administrative expenses. There is some debate between the parties as to the necessity or appropriateness of this section 724(b) maneuver by the Trustee, but that debate is irrelevant; because the exemption is valid, the Homestead is not property of the estate, and section 724(b) does not apply.

#### 1. The Debtors have Equity in their Homestead.

The Trustee argues that because the Debtors have no equity in their home, there is nothing to exempt. ECF No. 109 at 3. Based on the current valuation of the Homestead and relevant liens, this argument is unfounded. The Debtors value the Homestead at $236,484. ECF Nos. 79 and 84. The Travis County Tax Collector asserts a $6,122 claim secured by a lien on the Homestead. ECF No. 79. The IRS asserts a $350,251.98 claim, which is partially secured by a $276,832 lien on the Homestead. ECF No. 79 and Claim No. 3-3.

---

[6] Although "the commencement of a bankruptcy case creates an estate comprising all legal and equitable interests in the property (including potentially exempt property) of the debtor as of that date," debtors may remove certain property from their estates by using state or federal exemptions. *Zibman v. Tow (In re Zibman),* 268 F.3d 298, 301 (5th Cir. 2001).

4

As noted above, however, this Court approved an agreement between the Debtors and the IRS, in which the IRS agreed to "accept a payment of $140,000 in full and final satisfaction" of the $276,832 that the IRS claimed the Debtors owed for taxes from 1999 through 2009. ECF No. 114. This leaves the Debtors with approximately $90,000 of equity in the Homestead. The IRS has not agreed to release the related tax lien until the full settlement amount of $140,000 is tendered and may foreclose on the property if the Debtors default on their settlement payments. If the IRS does foreclose, however, the IRS may only collect the balance owed under the settlement. *Id.*

Although the Trustee has not addressed the pending settlement with the IRS, the Trustee could point out that under the "snapshot rule," the exemption should be determined by the facts and law in effect on the petition date. *Zibman v. Tow (In re Zibman),* 268 F.3d 298, 302 (5th Cir. 2001). Since the settlement with the IRS did not exist on the petition date, the Trustee might argue, it should not be considered in ruling on the exemption.[7] But even if the Court disregarded the IRS settlement, and found as a result that the Debtors have no equity in the Homestead, the exemption is valid.

## 2. Equity is not Necessary to Claim the Texas Homestead Exemption.

Subject to a ten-acre size limit for urban homes, a Texan can make a home a homestead by using it as a homestead and intending it to be a homestead. *Border v. McDaniel (In re McDaniel)*, 70 F.3d 841, 843 (5th Cir. 1995); *Bradley v. Pacific Southwest Bank, FSB (In re Bradley),* 960 F.2d 502, 509 (5th Cir. 1992); *Niland v. Deason (In re Niland)*, 825 F.2d 801, 808 (5th Cir. 1987). The Trustee does not dispute that the Debtors' residence qualifies as a homestead based on its size and location. Nor does the Trustee dispute that the Debtors' intend

---

[7] Of course, the Fifth Circuit has interpreted the snapshot rule to allow the image in the petition date photo to include certain post-petition events, or at least the prospect of those events. *See Zibman,* 268 F.3d at 304 and *Frost v. Viegelahn (In re Frost)*, 744 F.3d 384, 386-87 (5th Cir. 2014).

5

to use their residence as a homestead, and are actually using it as such. Instead, the Trustee questions whether the Debtors can invoke homestead protection for a property in which they have no equity. This Court finds that they may.

According to the Trustee, because the Debtors have no equity in their homestead, they have no interest in the property to exempt. As the Trustee notes, courts have denied exemptions on this basis. *In re Messina*, 687 F.3d 74 (3d. Cir. 2012); *In re Reeves*, No. 10-02562-8-SWH, 2011 WL 841238, at *1 (Bankr. E.D.N.C. Mar. 8, 2011) *aff'd sub nom. Reeves v. Callaway*, No. 5:11-CV-280-F, 2012 WL 10180780 (E.D.N.C. Aug. 14, 2012) *aff'd,* 546 F. App'x 235 (4th Cir. 2013). There is, however, a critical difference between the cases cited by the Trustee and the matter at hand; the debtors in those cases did not claim their exemptions under Texas law. The statutes relied on by the debtors in those cases limit protection to the debtors' interest in property up to a specified dollar amount. In contrast, the Texas homestead exemption extends to the property itself regardless of value.

As the Supreme Court held in *Schwab*, an exemption defined by the language "'interest' up to a specified dollar amount" does not give the debtor an exemption in the property itself. *Schwab v. Reilly*, 560 U.S. 770, 782 (2010). In *Messina*, the debtors opted to use the federal exemptions under 11 U.S.C. § 522(d)(1) and (5),[8] which allow a debtor to protect "[t]he debtor's aggregate interest" in property up to a specified dollar amount. *Messina*, 687 F.3d at 76.

---

[8] The federal exemption statute (then in effect) allowed a debtor to protect:

> The debtor's aggregate interest, not to exceed $15,000 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

11 U.S.C. § 522(d)(1) (2000), *amended by* 11 U.S.C. § 522(d)(1) (2007 and 2010). "The debtor's aggregate interest in any property, not to exceed in value $800 plus up to $7,500 of any unused amount of the exemption provided under paragraph (1) of this subsection." 11 U.S.C. § 522(d)(5) (2000), *amended by* 11 U.S.C. § 522(d)(5) (2007 and 2010).

6

In *Reeves*, the debtors claimed an exemption under North Carolina state law. *Reeves*, 2011 WL 841238 at *1. Using language nearly identical to that used in the federal exemptions, the North Carolina exemption protects an interest in property up to a certain amount, but not the property itself.[9] When the Fourth Circuit later affirmed the *Reeves* decision, it emphasized "the distinction between exempting an asset itself … and exempting an interest in such asset…." *Reeves v. Callaway,* 546 F. App'x. 235, 239 (4th Cir. 2013) (citing *Schwab*, 560 U.S. at 781).[10] The Fourth Circuit found equity to be essential to the North Carolina exemption because it pertains to a limited interest in the property, "in contrast to exemptions which pertain to certain property in kind or in full regardless of value." *Reeves,* 546 F. App'x. at 237 (citing 11 U.S.C. § 522(d)(9); *Schwab*, 560 U.S. at 782).

Unlike the federal and North Carolina exemptions, Texas homestead law is not limited to an interest up to a specified amount. Tex. Const. art. XVI, § 51; Tex. Prop. Code § 41.002. "In Texas, homestead rights are sacrosanct." *McDaniel*, 70 F.3d at 843. The purpose of Texas homestead law is to provide "a secure asylum of which the family cannot be deprived by creditors." *England v. Federal Deposit Ins. Corp. (In re England)*, 975 F.2d 1168, 1174 (5th Cir.

---

[9] North Carolina's statute protects:

The debtor's aggregate interest, not to exceed thirty-five thousand dollars ($35,000) in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor; however, an unmarried debtor who is 65 years of age or older is entitled to retain an aggregate interest in the property not to exceed sixty thousand dollars ($60,000) in value so long as the property was previously owned by the debtor as a tenant by the entireties or as a joint tenant with rights of survivorship and the former co-owner of the property is deceased.

N.C. Gen. Stat. § 1C-1601(a)(1) (2013). "The debtor's aggregate interest in any property, not to exceed five thousand dollars ($5,000) in value of any unused exemption amount to which the debtor is entitled under subdivision (1) of this subsection." N.C. Gen. Stat. § 1C-1601(a)(2) (2013).

[10] *Reeves* was not selected for publication in the Federal Reporter. However, citation of unpublished opinions issued on or after January 1, 2007 is not prohibited or restricted. Fed. R. App. P. 32.1. *See also* 4th Cir. R. 32.1.

1992) (quoting *Allison v. Shilling*, 27 Tex. 450, 455 (1864)). There is no dollar limit to the exemption because it is the homestead itself, rather than the debtor's equity, that Texas law protects. *See Frost*, 744 F.3d at 390 (noting that the Texas homestead exemption lies in "the *real property* itself, with no limitation in value.") and *In re D'Avila*, 498 B.R. 150, 159 n. 6 (Bankr. W.D. Tex. 2013) (distinguishing between the unlimited Texas homestead exemption and the California exemption that is limited to $150,000 in proceeds). Even if the Debtors had no equity to exempt, they would still have a residence that is itself exempt under Texas homestead law.[11]

### III. Conclusion

In conclusion, the Court holds that the Debtors' homestead exemption is proper and the Homestead is not property of the estate. The Trustee's objection is therefore denied.

---

[11] It is possible to have a Texas homestead that is limited in amount under subsection 522(o), (p) or (q). But those subsections do not apply in this case.